# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VINCENT LONG, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-15-1019-M |
| | ) |
| MAYCO, INC., | ) |
| | ) |
|     Defendant. | ) |

## ORDER

This case is scheduled for trial on the Court's December 2016 trial docket.

Before the Court is Defendant's Motion for Summary Judgment & Brief in Support, filed October 3, 2016. On November 1, 2016, plaintiff filed his response, and defendant has filed no reply. Based on the parties' submissions, the Court makes its determination.

I.    Background[1]

Plaintiff began working for defendant on April 11, 2011 and was terminated on April 9, 2014. During the duration of plaintiff's employment with defendant, plaintiff had fifty-eight documented absences, which included full shifts, partial shifts, and shifts in which plaintiff was tardy.[2] Plaintiff's son was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), and some of plaintiff's absences from work were attributed to him having to pick his son up from school, due to behavior resulting from his ADHD, and taking his son to counseling sessions and

---

[1] The facts set forth are undisputed unless otherwise noted.

[2] The parties dispute whether these absences were excused or unexcused. Plaintiff contends that he used vacation leave, which was deemed excused, for any time he needed off to handle circumstances outside of those dealing with his minor son's medical issues, and for his minor son's medical issues, plaintiff contends that he would use vacation or leave without pay. *See* Mot. for Summ. J., Ex. 4, Plaintiff's Responses to Defendant's First Set of Interrogatories and Requests for Production of Documents at resp. to interrogatory no. 7.

to get medical treatment. Plaintiff's other absences from work were attributed to non-medical related issues. On August 28, 2012, plaintiff was given a written warning for excessive tardiness; on March 13, 2014, plaintiff was given a written warning for excessive tardiness and excessive absenteeism, and on March 31, 2014, plaintiff was suspended from work without pay for three days for excessive tardiness and excessive absenteeism.[3] *See* Mot. for Summ. J., Ex. 6, Plt Discipline Notices. On April 9, 2014, plaintiff was terminated after he left work to pick up his son from school.

While plaintiff had no condition that would qualify for protection under the Family Medical Leave Act ("FMLA"), defendant was aware that plaintiff's son had ADHD. No notices regarding FMLA were posted in defendant's workplace nor did defendant inform plaintiff that he might qualify for FMLA coverage for his son's repeated medical issues. Further, at the end of March 2014, plaintiff requested two-weeks (10 days) of vacation leave to commence on April 21, 2014 through May 2, 2014; however, after his termination, plaintiff received his final paycheck on August 19, 2014, which omitted plaintiff's accrued vacation time.

On September 17, 2015, plaintiff filed this action against defendant alleging the following causes of action: (1) interference with FMLA; (2) retaliation – FMLA; and (3) state law wage claim, pursuant to Okla. Stat. tit. 40, §§ 165.1 & 165.3. Defendant now moves this Court, pursuant to Federal Rule of Civil Procedure 56, to enter summary judgment in favor of defendant since there is no genuine dispute as to any material fact.

---

[3] The written warning issued to plaintiff on March 13, 2014, warned plaintiff that any further tardiness or absenteeism could result in a three day suspension without pay, and the written warning issued to plaintiff on March 31, 2014, warned plaintiff that any further tardiness or absenteeism could result in termination. *See* Mot. for Summ. J., Exhibit 6 – Plt. Discipline Notices.

II.     Summary Judgment Standard

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechs. v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted)

III.    Discussion

   A.   FMLA Interference and Retaliation Claims

Subject to providing sufficient certification issued by a health care provider, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). An employee caring for another, as enumerated in § 2612(a)(1)(C), may take leave intermittently or on a reduce leave schedule when medically necessary. *See* 29 U.S.C. § 2612(b)(1). When leave under

FMLA is foreseeable, an employee "shall make a reasonable effort to schedule treatments as so not to disrupt unduly the operations of the employer," and "shall provide the employer with not less than 30 days' notice, before the date the leave is to begin, . . . except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2).

To establish a FMLA interference claim, plaintiff must demonstrate that (1) he was entitled to FMLA leave, (2) some adverse action by the employer interfered with his right to take FMLA leave, and (3) the employer's action was related to the exercise or attempted exercise of his FMLA rights. *See DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1159 (10th Cir. 2009). "Under this theory, a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent." *Id.* (internal quotations and citation omitted). However, an employer can defend a FMLA interference claim "by showing that the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Id.* at 1159-60 (internal quotations and citation omitted).

In its motion for summary judgment, defendant contends, and plaintiff agrees, that the only disputed element is if plaintiff's son's ADHD qualifies as a serious health condition entitling plaintiff to FMLA leave. "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves – . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B). A serious health condition involving continuing treatment by a health care provider may include:

> any period of incapacity or treatment for such incapacity due to a serious health condition. A chronic serious health condition is one which: (1) Requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider; (2) Continues over an extended period of time (including recurring episodes of a single

> underlying condition); and (3) May cause episodic rather than a continuing period of incapacity (e.g. asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.115(c). "The term incapacity means inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). Further,

> The term treatment includes (but is not limited to) examinations to determine if a serious health condition exists and evaluations of the condition. Treatment does not include routine physical examinations, eye examinations, or dental examinations. A regimen of continuing treatment includes, for example, a course of prescription medication (e.g., an antibiotic) or therapy requiring special equipment to resolve or alleviate the health condition (e.g., oxygen). . . .

*Id.* at (c).

Defendant relies on the Sixth Circuit case *Perry v. Jaguar of Troy*, 353 F.3d 510 (6th Cir. 2003), which found that the plaintiff's son's ADHD was not a serious health condition as defined in the FMLA, since the plaintiff could not show that his son was incapacitated in any way. *Id.* at 515. ("In support of its motion for summary judgment, defendant presented evidence that Victor was able to attend school and engage in the same daily activities in which most children engaged: riding the bus to and from school, riding bikes, swimming, playing video games, watching television, and playing with neighborhood friends.")

Defendant contends that ADHD is not a serious health condition covered under the FMLA, and, further, even if plaintiff's son's ADHD is considered a serious health condition under the FMLA, plaintiff never requested leave under the FMLA; therefore, defendant was not given proper notice that plaintiff wanted to use leave under the FMLA. Defendant also asserts that since plaintiff's son's ADHD is not considered a serious health condition under the FMLA,

5

and plaintiff did not provide the proper notice to use leave under the FMLA, plaintiff's FMLA retaliation claim must fail as well.

Plaintiff contends that the circumstances surrounding this matter differ from those in *Perry*, as plaintiff's son cannot properly attend school since he is repeatedly sent home due to his symptoms from ADHD, and, further, plaintiff's son is being treated by several medical professionals and has been placed on several medications to treat his ADHD. Further, plaintiff contends that defendant never provided plaintiff information regarding FMLA benefits.

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether plaintiff's son's ADHD is a serious health condition as defined in the FMLA, that would have entitled plaintiff to FMLA leave. Specifically, the Court finds that, upon his employment with defendant, plaintiff explained to defendant that his son had ADHD and would need time off to take care of his son's medical issues. *See* Plf. Resp., Ex. 3, Sworn Affidavit of Vincent Long ¶2. Further, the Court finds that plaintiff's statement that, "[w]hile working a[t] Mayco, Inc., [he] never saw any posters or signs that talked about FMLA or the Family Medical Leave Act, [or] did not even know what [FMLA] meant," *id*. ¶5, creates a genuine issue of disputed fact as to whether plaintiff was entitled to FMLA leave, and whether plaintiff gave defendant proper notice for using leave under the FMLA.

Accordingly the Court finds that defendant is not entitled to summary judgment as to plaintiff's FMLA interference or retaliation claims.

B. State Wage Claim

"To establish a wage claim under the Oklahoma Protection of Labor Act, an employee has the burden of establishing the following elements: 1) an employer-employee relationship; 2) wages are earned and due or provided in an established policy; 3) employment was terminated; and 4) the employer failed to pay the employee's wages at the next regular pay day after termination." *Coen v. SemGroup Energy Partners G.P., LLC*, 310 P.3d 657, 662 (Okla. Civ. App. 2013).

Plaintiff asserts that his final paycheck omitted vacation time that he had already earned, as well as omitted any detail regarding deductions, taxes, withholdings, or vacation time accrued, unlike his previous paychecks, which included detailed wage information. Defendant contends that since plaintiff was terminated on April 9, 2014, he was not entitled to his vacation time since it would have accrued on his anniversary date of April 11, 2014. Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds that plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether plaintiff was entitled to his vacation time. Specifically, based on evidence presented by plaintiff as to the wage information that was provided on his paycheck while plaintiff was still employed with defendant and the lack of wage information provided on plaintiff's final paycheck, the Court finds that plaintiff has created a genuine issue of disputed fact as to whether he was entitled to his vacation time. *See* Plf. Resp., Exs. 9 and 10, Plaintiff's paycheck stubs from defendant.

Accordingly, the Court finds that defendant is not entitled to summary judgment as to plaintiff's state law wage claim.

IV. Conclusion

Accordingly, for the reasons set forth above, the Court DENIES Defendant's Motion for Summary Judgment & Brief in Support [docket no. 14].

**IT IS SO ORDERED this 16th day of November, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE